IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MARTHA LUKETTA BROWN,              §
                                   §
             Plaintiff,            §
                                   §
V.                                 §
                                   §        No. 3:14-cv-4237-BN
                                   §
CAROLYN W. COLVIN,                 §
Acting Commissioner of Social Security,  §
                                   §
             Defendant.            §

## MEMORANDUM OPINION AND ORDER

Plaintiff Martha Luketta Brown seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons explained below, the hearing decision is reversed.

## Background

Plaintiff alleges that she is disabled as a result of lower disc injury to her back and depression. *See* Administrative Record [Dkt. Nos. 14 & 15 ("Tr.")] at 219. After her applications for disability insurance benefits and supplemental security income ("SSI") benefits were denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). That hearing was held on August 1, 2013. *See id.* at 44-75. At the time of the hearing, Plaintiff was 49 years old. *See id.* at 49. She completed the eleventh grade and has past work experience as a kitchen helper, food assembler or repackager, home health aid, and hand packager. *See id.* at 49, 67-68.

Plaintiff has not engaged in substantial gainful activity since May 6, 2011. *See id.* at 30, 51.

The ALJ found that Plaintiff was not disabled and therefore not entitled to disability or SSI benefits. Although the medical evidence established that Plaintiff suffered from degenerative disc disease of the lumbar spine and major depressive disorder, the ALJ concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. *See id.* at 30. The ALJ further determined that Plaintiff had the residual functional capacity to perform a limited range of light work but could not return to her past relevant employment. *See id.* at 32, 36. Relying on a vocational expert's testimony, the ALJ found that Plaintiff was capable of working as a cleaner, photo copy machine operator, and laundry worker – jobs that exist in significant numbers in the national economy. *See id.* at 36-37, 69-70.

Plaintiff appealed that decision to the Appeals Council. The Council affirmed.

Plaintiff then filed this action in federal district court. Plaintiff challenges the hearing decision on two general grounds: (1) the ALJ improperly rejected the opinions of her treating and examining physicians; and (2) the assessment of her residual functional capacity is not supported by substantial evidence and results from reversible legal error.

The Court determines that the hearing decision is reversed and this case is remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.

## Legal Standards

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether Commissioner applied the proper legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Copeland*, 771 F.3d at 923. The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo*. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Copeland*, 771 F.3d at 923; *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). The Court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

"In order to qualify for disability insurance benefits or [supplemental security income], a claimant must suffer from a disability." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)). A disabled worker is entitled to monthly social security benefits if certain conditions are met. *See* 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in

substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Copeland*, 771 F.3d at 923; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Commissioner has promulgated a five-step sequential evaluation process that must be followed in making a disability determination:

1. The hearing officer must ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The hearing officer must determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3. The hearing officer must decide if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. The hearing officer must make this determination using only medical evidence.

4. If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his or her past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

*See* 20 C.F.R. § 404.1520(b)-(f); *Copeland*, 771 F.3d at 923 ("The Commissioner typically uses a sequential five-step process to determine whether a claimant is disabled within the meaning of the Social Security Act. The analysis is: First, the claimant must not be presently working. Second, a claimant must establish that he has

an impairment or combination of impairments which significantly limit [her] physical or mental ability to do basic work activities. Third, to secure a finding of disability without consideration of age, education, and work experience, a claimant must establish that his impairment meets or equals an impairment in the appendix to the regulations. Fourth, a claimant must establish that his impairment prevents him from doing past relevant work. Finally, the burden shifts to the Secretary to establish that the claimant can perform the relevant work. If the Secretary meets this burden, the claimant must then prove that he cannot in fact perform the work suggested." (internal quotation marks omitted)); *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007) ("In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity.").

The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *See Copeland*, 771 F.3d at 923; *Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Copeland*, 771 F.3d at 923; *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id.* However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows that the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

## Analysis

Among the arguments Plaintiff makes are two grounds that compel remand –
the ALJ erred by not considering the 20 C.F.R. §§ 404.1527 and 416.927 factors before
declining to give weight to her treating physician's opinions and the ALJ's finding that
Plaintiff has the residual functional capacity ("RFC") to perform light work was not
supported by the opinion of an acceptable medical source.[1]

I.   <u>The ALJ did not apply correct legal standards in weighing physician opinions.</u>

Plaintiff first contends that the ALJ applied incorrect legal standards to the
treating and examining physicians and implicitly relied on a chiropractor's opinion of
Plaintiff's work-related limitations instead. The ALJ determined that Plaintiff has the
RFC to perform light work, except that Plaintiff is limited to occasional bending,
stooping, and crouching and the work should be routine, repetitive, and simple with
only occasional interaction with others. Plaintiff alleges that, in making this
determination, the ALJ improperly rejected the opinions of treating physician Tuan
Trinh, D.O., and examining physician, Linda Ludden, Ed. D., and instead assigned
controlling weight to the opinion of chiropractor Terry Williams without conducting the
analysis required by 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2).

But the record makes clear that the ALJ considered the opinions of all three
doctors as well as Plaintiff's testimony and the opinions of two state agency medical
consultants. *See* Tr. at 32-36. Dr. Williams, a chiropractor, performed a worker's

---

[1] By remanding this case for further administrative proceedings, the Court does
not suggest that Plaintiff is or should be found disabled.

compensation evaluation on June 8, 2011. *See* 297-300. Dr. Williams concluded that Plaintiff had 0% whole person impairment and had reached maximum medical improvement. During the examination, Plaintiff walked at a normal pace with no limp and required no external support. Dr. Williams noted that Plaintiff "attains supine and prone positions with some exaggerated caution" and "when asked to perform tasks, Plaintiff was able to do most pushing, pulling, and lifting with some exaggerated caution." According to the ALJ, "[i]n the opinion of [Dr. Williams, Plaintiff] appeared to magnify her overt distress." Dr. Williams also noted that Plaintiff's lumbar spine was only mildly tender and her neurological exam was unremarkable, with Plaintiff able to heel and toe walk normally, with no sensory or motor deficits in the extremities and with normal reflexes. Dr. Williams reviewed a MRI taken on May 24, 2011, which showed broad disc bulges at L4-5 and L5-S1, and stated that there were "no observations of any significant pathology." And Dr. Williams noted that Plaintiff showed no motor muscle weakness, with 5/5 strength in all extremities.

Dr. Trinh, Plaintiff's treating physician, disagreed with Dr. Williams's assessment that Plaintiff reached maximum medical improvement on June 8, 2011. *See id.* at 354-55. In a June 11, 2012 letter, Dr. Trinh opined that Plaintiff would benefit from lumbar epidural steroid injections followed by additional physical therapy, as recommended by Francisco Batlle, M.D. *See id.* at 345-48, 354-55. Plaintiff received epidural steroid injections at L5-S1 from September 13, 2012 through December 18, 2012. *See id.* at 343, 352, 401.

On July 19, 2013, Dr. Trinh completed a Physical Residual Functional Capacity Questionnaire. *See id.* at 435-37. According to Dr. Trinh, during an eight-hour work day, Plaintiff could sit for five hours, stand or walk for six hours, and lie down or recline for eight hours. Dr. Trinh stated that Plaintiff could sit for thirty minutes and stand for sixty minutes at a time without needing to change position and that she would need the flexibility to occasionally change positions. Dr. Trinh also stated that Plaintiff could occasionally lift or carry no more than twenty pounds and do simple grasping, pushing and pulling, and fine manipulation with no restriction. Dr. Trinh described Plaintiff's degree of pain as slight and stated that Plaintiff would need occasional rest periods during the day and would probably miss two to three days of work each month. After the administrative hearing, Plaintiff submitted a supplemental statement from Dr. Trinh dated October 14, 2013, in which he reported that Plaintiff's pain would cause her to remain off-task for approximately five minutes every hour and that she would need to alternate between sitting and standing throughout a typical work day. *See id.* at 755.

Dr. Ludden performed a consultative mental status examination on October 24, 2011. *See id.* at 304-09. According to Dr. Ludden, Plaintiff reported a history of depression at age 20, with worsening symptoms after the deaths of her father and sister. Plaintiff also reported paranoia that started at age 20 and continued to the time of the examination. Plaintiff had been medicated for paranoid delusions from 1984 to 1989 and reported panic attacks for the last five years occurring two to three times a month. Dr. Ludden noted that Plaintiff endorsed symptoms that met the criteria for

panic disorder without agoraphobia and depression as well as symptoms that did not meet the criteria for any specific psychotic disorder. Plaintiff's symptoms included panic attacks with shaking, sweating, palpitations, weight gain, fatigue and loss of energy, feelings of worthlessness, and diminished ability to think or concentrate. Plaintiff indicated that she could independently attend to her personal needs, perform simple chores, maintain her residence, travel to unfamiliar places, use public transportation, prepare her own meals, and shop for groceries. Plaintiff reported that she had no friends and had fair relations with her family and authority figures. Plaintiff reported difficulty finishing tasks in a timely manner due to problems with taking initiative and procrastination. She lived in an apartment by herself and attended church bi-weekly. On the mental status examination, Plaintiff was cooperative with decreased activity level. Her thought process was normal, while her thought content was positive for delusional thoughts since age 20. Plaintiff presented with a depressed mood and restricted affect. Her intelligence was average, and her remote and immediate memory were adequate. Her short-term memory was poor, with Plaintiff being able to recall one of three objects after five minutes. Plaintiff could spell the words "world" and "card" forward and backward, say the months of the year in reverse with no errors, and count backward from twenty with no errors, but she appeared to struggle to complete such tasks.

Dr. Ludden rendered diagnoses of major depressive disorder, recurrent, severe, with psychotic features, psychotic disorder, and panic disorder without agoraphobia, and a Global Assessment of Functioning ("GAF") score of 43, and her prognosis was

poor to guarded. The ALJ noted that a GAF of 43 denotes serious symptoms or serious impairment in functioning. *See id.* at 35.

The ALJ also considered the opinions of two state agency medical consultants ("SAMCs"). *See id.* at 35, 324-27 (Mental Residual Functional Capacity Assessment by Robert Gilliland, M.D. dated October 31, 2011), 328-35 (Physical Residual Functional Capacity Assessment by Laurence Ligon, M.D. dated November 13, 2011). The ALJ noted that the SAMCs determined that Plaintiff had no exertional or other physical limitations and that she could understand, remember, and carry out detailed but not complex instructions, make decisions, attend and concentrate for extended periods, accept instructions, and respond appropriately to changes in routine work settings. *See id.* at 35.

Plaintiff contends that the ALJ erred in assigning weight to the physicians' opinions. The opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight in determining disability. *See Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan*, 38 F.3d at 237. A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence." *Martinez*, 64 F.3d at 175-76 (citing 20 C.F.R. § 404.1527(c)(2)). And "[t]he opinion of a specialist generally is accorded greater weight than that of a non-specialist." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir.

2000). But the ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion" when good cause is shown. *Id.* at 455-56 (internal quotations omitted). An ALJ may show good cause "where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id.* at 456.

Section 404.1527(c)(2) requires the ALJ to consider specific factors "to assess the weight to be given to the opinion of a treating physician when the ALJ determines that [the opinion] is not entitled to 'controlling weight.'" *Id.* at 456. Specifically, the ALJ must consider:

(1) the physician's length of treatment of the claimant;

(2) the physician's frequency of examination;

(3) the nature and extent of the treatment relationship;

(4) the support of the physician's opinion afforded by the medical evidence of record;

(5) the consistency of the opinion with the record as a whole; and

(6) the specialization of the treating physician.

20 C.F.R. § 404.1527(c)(2); *accord* 20 C.F.R. 416.927(c)(2); *see also Newton*, 209 F.3d at 456. The ALJ must consider all six of the Section 404.1527(c)(2) factors if "controlling weight" is not given to a treating physician's medical opinions. *See* 20 C.F.R. § 404.1527(c) ("Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion."); *see also Myers v. Apfel*, 238 F.3d

617, 621 (5th Cir. 2001); *McDonald v. Apfel*, No. 3:97-CV-2035-R, 1998 WL 159938, at *8 (N.D. Tex. Mar. 31, 1998).

In *Newton*, the United States Court of Appeals for the Fifth Circuit concluded that "an ALJ is required to consider each of the § 404.1527[(c)] factors before declining to give any weight to the opinions of the claimant's treating specialist." 209 F.3d at 456. But, in decisions construing *Newton*, the Fifth Circuit has explained that "[t]he *Newton* court limited its holding to cases where the ALJ rejects the sole relevant medical opinion before it." *Qualls v. Astrue*, 339 F. App'x 461, 467 (5th Cir. 2009). Therefore, where there are competing opinions of examining physicians, the ALJ need not necessarily set forth his analysis of the Section 404.1527(c) factors when declining to give controlling weight to a treating physician. *See id.* at 466-67.

The ALJ did not give Dr. Trinh's opinion "any significant weight" because the ALJ found it to be internally inconsistent and inconsistent with the treating records. *See id.* at 34. According to the ALJ, Dr. Trinh only indicated the claimant's degree of pain to be slight but stated that the claimant would be expected to be absent from work two to three days a month. The ALJ further explained that,

> [i]n addition, Dr. Trinh's restrictions on sitting and standing are incompatible with the need to recline for much of the day. The opinion is also not supported by the treating evidence, which shows only minor findings on the MRI and good response to minimal treatment. In fact, Dr. Trinh's own treating records fail to support such restrictions, as they were mostly brief and repetitive, noting only the presence of spasms in the lumbar area. Therefore, given the lack of compelling evidence to support limitations of disabling severity, the undersigned finds the claimant capable of work at the light exertional level with appropriate postural and mental restrictions.

*Id.* (citation omitted). An ALJ can decrease reliance on a treating physician's opinions for good cause, and good cause includes "disregarding statements [by the treating physician] that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by evidence." *Leggett*, 67 F.3d at 566. And the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion. *See Martinez*, 64 F.3d at 176.

The ALJ also gave some weight to the opinions of the SAMCs as opinions from non-examining sources. But, in consideration of the evidence from Dr. Trinh submitted after the administrative hearing, the ALJ imposed additional limitations that were greater than those that the SAMCs found. *See id.* at 35.

Dr. Ludden's opinion was "not given much weight" by the ALJ because, as the ALJ explained, Plaintiff's reported mental symptoms lacked corroboration in the evidence of record and there was no indication that Plaintiff had sought any recent mental health treatment for disabling symptoms. *See id.* The ALJ further explained that,

> [i]n addition, the claimant's low GAF score of 43 does not appear to be consistent with the claimant's reported level of functioning, in which she said she could attend to her personal needs, maintain her residence, travel to unfamiliar places, take public transportation, prepare her own meals, and shop for groceries. While the claimant appears to have some functional limitations given her performance on mental status examination, based on her independence with various activities of daily living, the undersigned finds the claimant capable of performing routine, repetitive, and simple work. Although the claimant has reported a lack of sociability, her being able to go to grocery stores to shop as well as attend regular church services suggests that her symptoms are not severe enough to prevent regular employment. Therefore, the undersigned finds it appropriate to limit the claimant to no more than occasional interaction

with others in a work setting that involves only routine and repetitive tasks.

*Id.*

One of the arguments that Plaintiff makes is that the ALJ erred by rejecting the opinion of Dr. Trinh, Plaintiff's treating physician, without weighing the six factors laid out in *Newton*, and instead implicitly giving controlling weight to the opinion of the chiropractor, who is not an acceptable medical source. Only "acceptable medical sources" can be considered treating sources, as defined in 20 C.F.R. §§ 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight. *See* 20 C.F.R. §§ 404.1513, 416.913 (2011) (listing acceptable medical sources as licensed physicians, psychologists, podiatrists, and speech-language pathologists). And "[o]nly 'acceptable medical sources' can establish the existence of a medically determinable impairment, give medical opinions, and be considered treating sources whose medical opinions may be entitled to controlling weight." *Thibodeaux v. Astrue*, 324 F. App'x 440, 445 (5th Cir. 2009). An ALJ may also use evidence from other sources to show the severity of an impairment and how it affects the claimant's ability to work. *See* 20 C.F.R. §§ 404.153(d)(1), 416.913(d)(1). Chiropractors are classified as other medical sources. *See id.* The Fifth Circuit has recognized that the opinion of an "other medical source" – even one who has treated the claimant on a regular basis – is not entitled to the same deference as an opinion provided by an "acceptable medical source." *Thibodeaux*, 324 F. App'x at 445; *see also Griego v. Sullivan*, 940 F.2d 942, 945 (N.D. Tex. 1991)

(explaining that "the relevant regulations accord less weight to chiropractors than to medical doctors").

The facts of this case put it squarely within *Newton*'s purview. The ALJ rejected not only the treating physician's opinion but also that of the examining physician and the SAMCs. She did not give the treating physician's opinion any significant weight, she rejected the examining physician's opinion, and she gave the SAMCs' opinions some weight as the opinions of non-examining sources. But she failed to identify any acceptable medical source on which her RFC determination was based. Per *Newton*'s strictures, when the ALJ decided to afford essentially no weight to the opinions of the treating and examining physicians, and instead cobbled together an RFC that is not supported by the opinion of any acceptable medical source, the ALJ had an obligation to consider each of the Section 404.1527 factors. *See Newton*, 209 F.3d at 453; *see also Loza v. Apfel*, 219 F.3d 378, 393-94 (5th Cir. 2000) ("Finally, it is clear that the ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position.").

And, while the ALJ stated that she reviewed the evidence in accordance with 20 C.F.R. §§ 404.1527 and 416.927(c)(2), she did not appear to do so. There is no discussion of the treating physician's length of treatment or frequency of examination; nor is there any discussion of the nature and extent of the treatment relationship. While there is some discussion of the medical evidence record as a whole, there is no analysis of the support afforded to the physician's opinion by the medical evidence of

record, the consistency of the opinion with the record as a whole, or the specialization of the treating physician.

The Court acknowledges that the ALJ did recite, with no further elaboration, that she considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. §§ 404.1529 and 416.929 and SSRs 96-4p and 96-7p," and that she "also considered opinion evidence in accordance with the requirements of 20 CFR §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p." *See* Dkt. No. 14-2 at 17. But this statement, on its own, is not sufficient to satisfy *Newton. See Gerken v. Colvin*, No. 3:13-cv-1586-BN, 2014 WL 840039, at *6 (N.D. Tex. Mar. 4, 2014). The Court also notes that the evidence in the record may well support a finding that Plaintiff is not disabled. But "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton*, 209 F.3d at 455. "Reviewing courts do not consider rationales supporting an ALJ's decision that are not invoked by the ALJ." *Bragg*, 567 F. Supp. 2d at 907.

The ALJ's failure to consider the Section 404.1527 factors when rejecting Dr. Trinh's opinions was prejudicial error. It is the ALJ's responsibility to weigh the evidence, and the Court is unable to say what the ALJ would have done had she weighed all relevant evidence of record. The opinions expressed by Dr. Trinh included significant limitations beyond those that the ALJ recognized in determining both Plaintiff's RFC and her ability to engage in any form of substantial gainful activity.

Had the ALJ given proper consideration to the treating physician's records and assessment of Plaintiff's ability to engage in work-related activities, the ALJ might have reached a different decision as to disability. This is especially true in light of the fact that the burden lies with the Commissioner at Step 5 to identify gainful employment available in the national economy that the claimant is capable of performing. *See Greenspan*, 38 F.3d at 236; see also *Myers v. Apfel*, 238 F.3d 617, 621-22 (5th Cir. 2001) (holding that remand was required when the ALJ failed to consider all evidence from a treating source and failed to present good cause for rejecting it); *Newton*, 238 F.3d at 621-22 (holding that remand was required when the ALJ failed to consider each of the Section 404.1527 factors before declining to give weight to the opinions of the claimant's treating specialist); *Harris v. Astrue*, No. 3:11-cv-1089-M-BH, 2012 WL 4442303, at *15 (N.D. Tex. Sept. 7, 2012), *rec. adopted*, 2012 WL 4458405 (N.D. Tex. Sept. 26, 2012).

II.     The ALJ's RFC finding is not supported by substantial evidence.

Plaintiff also argues that the ALJ's RFC finding is defective for two reasons. First, Plaintiff argues that, by rejecting all of the physicians' opinions of Plaintiff's limitations, the ALJ had no legitimate basis from which to formulate a valid RFC. Second, Plaintiff argues that the evidence fails to support the wide range of light work activity that the ALJ found Plaintiff could perform. In essence, Plaintiff asserts that the ALJ erred by substituting her judgment for that of the qualified medical experts.

The Fifth Circuit has "held that an ALJ may not – without opinions from medical experts – derive the applicant's residual functional capacity based solely on the

evidence of his or her claimed medical conditions," and "an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions." *Williams v. Astrue*, 355 F. App'x 828, 832 n.6 (5th Cir. 2009) (citing *Ripley*, 67 F.3d at 557)); *see also Moreno v. Astrue*, No. 5:09-cv-123-BG, 2010 WL 3025525, at *3 (N.D. Tex. June 30, 2010), *rec. adopted,* 2010 WL 3025519 (N.D. Tex. Aug. 3, 2010) (explaining that, without expert medical interpretation, "evidence describing the claimant's medical conditions is insufficient to support an RFC determination").

In this case, the ALJ impermissibly relied on her own lay opinion, derived from her interpretation of the medical evidence and not that of a medical expert, to determine the effects of Plaintiff's mental impairments on Plaintiff's ability to work. *See Frank v. Barnhart,* 326 F.3d 618, 622 (5th Cir. 2003) (ALJs "must be careful not to succumb to the temptation to play doctor" or make their own independent medical assessments.) (quoting *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)). The ALJ cited no expert who opined that Plaintiff was capable of performing light work that was limited to occasional bending, stooping, and crouching and no expert who opined that Plaintiff could perform routine, repetitive, and simple work with only occasional interaction with others. *See* Tr. at 32-36.

An ALJ may weigh competing medical opinions, *see Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012), but may not substitute her lay opinion for the uncontroverted medical opinion of the only physician who opined concerning the effects of Plaintiff's mental impairments, *see Williams*, 355 F. App'x at 832; *see also Morales v. Apfel*, 225

F.3d 310, 317 (3rd Cir. 2000) ("The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled. In choosing to reject the treating physician's assessment, an ALJ may not make 'speculative inferences from medical reports' and may reject 'a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion.") (citations omitted). Because the ALJ rejected the only medical expert evidence concerning the effects of Plaintiff's physical impairments, which the ALJ found to be severe, the ALJ's RFC determination is not supported by substantial evidence.

Nevertheless, because "[p]rocedural perfection in administrative proceedings is not required" and a court "will not vacate a judgment unless the substantial rights of a party are affected," Plaintiff must show she was prejudiced by the ALJ's failure to rely on medical opinion evidence in assessing her mental RFC. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). To establish prejudice, Plaintiff must show that the ALJ's failure to obtain a medical opinion assessing the effects her physical impairments had on her RFC casts doubt onto the existence of substantial evidence supporting her disability determination. *See McNair v. Comm'r of Soc. Sec.*, 537 F. Supp. 2d 828, 827 (N.D. Tex. 2009) ("Procedural errors in the disability determination process are considered prejudicial when they cast doubt onto the existence of substantial evidence in support of the ALJ's decision") (citing *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988)).

The ALJ's hypothetical questions to the vocational expert ("VE") incorporated the ability to perform light work, with no more than occasional bending, stooping, and crouching, and the ability to perform routine, repetitive, and simple work with occasional interaction with others. *See* Tr. at 69. In response to the questions, the VE concluded that Plaintiff could perform the jobs of cleaner, photo copy machine operator, and laundry worker. *See* Tr. at 69-70. In her unfavorable decision, the ALJ incorporated those limitations into the RFC, *see id.* at 32, and found that Plaintiff was capable of performing those jobs, *see id.* at 36.

Because the ALJ's unfavorable decision was based on the VE's answers to defective hypothetical questions, substantial evidence does not support the ALJ's finding that Plaintiff was not disabled. And Plaintiff's substantial rights have been affected because the ALJ's decision may have been different had the ALJ's hypothetical questions incorporated the mental limitations in the rejected medical opinions.

## Conclusion

The hearing decision is reversed and this case is remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.

DATED: October 27, 2015

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE